We will hear argument first this morning in Case 21-1168, Mallory v. Norfolk Southern Railway. Mr. Keller? Mr. Chief Justice, and may it please the Court, as far back as 1827, states enacted laws like Pennsylvania's, and by 1868, or shortly thereafter, every state in the Union had at least one, and often several, consent by registration statutes. This Court unanimously confirmed that such statutes comport with due process over a century ago, in reasoning that's been embraced by jurists from Holmes to Cardozo to Hand to Frankfurter. With history, tradition, and precedence on Mr. Mallory's side, how can my friend challenge Pennsylvania law under the original meaning of due process? By claiming that these statutes were really just about specific jurisdiction based on contacts. Never mind that specific jurisdiction wasn't a thing in 1868, and for decades after the 14th Amendment was ratified. Anachronistically, importing the principles of international shoe into the ratification generation is my friend's maneuver. Exactly what Justice Scalia counseled against in Burnham. That approach is not originalism. It's paying lip service to originalism. Treating the doctrine as an infinitely malleable pretext to reach a policy outcome that Norfolk Southern and other big businesses prefer. But originalism is not a pretext. It's a neutral doctrine that aims to faithfully apply our nation's Constitution, regardless of who benefits. Fidelity to the original public meaning of the 14th Amendment in this case means that the flesh and blood little guy wins, and the Fortune 500 company loses, irrespective of the exaggerated parade of horribles that my friend trots out. And if those policy considerations did somehow matter, corporations are quite adept at making their views known to state lawmakers. And Congress has tools at its disposal, from removal to preemption, if it appears that the sky is falling. There is no need for this court to short circuit the political process in the name of the Constitution. I welcome your questions. Mr. Keller, if we were to look through history and only find a handful of states that had laws similar to Pennsylvania's, how would we know when there's enough history to support your position? That's a fair question, Justice Thomas. I don't know what the exact dividing line is, but fortunately here there are many, many states that had laws like Pennsylvania's, so I don't think it's close to the line. Perhaps Your Honor is asking about the fact that there aren't a lot of foreign cube situations that come up in the case law, which is not surprising given the historical modes of transportation. But the text of these statutes is crystal clear. It applies to the foreign cube situation. That's what a lot of the cases say, even though the facts were foreign squared. And it doesn't really matter because we were in a consent-based regime that the facts aren't on all fours. So I think that's a pretty powerful indication that the states meant what they said when they enacted these statutes. And there are other indications of that. So, for example, many states had multiple consent-by-registration statutes on their books simultaneously. Tennessee, Michigan, and Indiana said that for insurance companies, you've got to consent to general jurisdiction. But for other companies, other foreign companies, you don't have to do that. You only have to consent to what we would now call specific jurisdiction. Were the legislatures confused? They didn't know that they were using different language? Of course not. They obviously intended for policy reasons to treat insurance companies differently from other foreign corporations. So that's a very powerful indication that the text of these statutes meant what they said. My friend does find a handful of cases that say, we're not going to give the statutory text its full sweep. We're going to rein it back. The best example of this is Sawyer from the Vermont Supreme Court. But I actually think these cases support Mr. Mallory, not the other side, because look at what they actually said. They said, as a matter of policy, we don't think the legislature meant it. The litigants didn't reference the due process clause. The courts didn't reference the due process clause. Justice Wheeler for the Vermont Supreme Court says, if the statute were even clearer, I would apply it. And no court in the United States finds a single one of these statutes unconstitutional until 1971. That's very redolent of the situation in Burnham. One final question. When we talk about consent, if you say that someone consented to waive their Fourth Amendment rights, you have an antecedent right under the Fourth Amendment. And there seems to be some disagreement here as to whether or not there is some right that a corporation has that is outside of or beyond or that is antecedent to the consent that we're talking about. So is there something that the railroad has that it's giving up, or is it simply a sovereign and a corporation entering into an agreement in order for that company, the corporation, to do business in the state of Pennsylvania? The contract analogy isn't perfect, but I think it's closer to the contract analogy. And I think, again, history and tradition supplies the answer. This is not the same context as the waiver of a Fourth Amendment right or other rights where we might require clear and knowing statements that you're giving up your right. The fact that every state did this and consent was the ground for personal jurisdiction, regardless of the category of statute, whether it was general jurisdiction like Pennsylvania's, whether it was general jurisdiction just for residents, which my friend doesn't really contest was constitutional, or what we would now call specific jurisdiction, they all did it the same way. File a piece of paper, appoint an agent to accept service of all process or process just for claims arising out of your agent's activity in the forum. So I think that history and tradition tells us that this was considered valid consent, and then you obviously confirmed that in 1917 through Pennsylvania Fire. Well, history and tradition move on. And as Justice Scalia said in the Daimler case, you shouldn't put heavy reliance on precedents from the Pennoyer era. Doesn't international shoe sort of relegate that body of cases to dustbin of history? No, Your Honor. Two responses to that. I agree that history moves on, but my view is that the Constitution has a fixed meaning, and if the states used to have a sovereign ability to do this, unless the Constitution has changed through the Article V procedure, I can't really understand how they lost that sovereign ability. And I would respectfully ask my friend, identify the case that overturned Pennsylvania Fire. Don't just point to some general line of cases. What overturned it? Well, international shoe. I mean, the fact that they didn't have a footnote saying all these other cases inconsistent with our approach have been overruled doesn't mean that they're any less, no longer good law. International shoe, Your Honor, is completely compatible with this regime. International shoe expressly says it's talking about how to get jurisdiction over a non-consenting corporation. It leaves completely untouched the ground of consent. And so, yes, we were living in a Pennoyer world in 1945. This court introduced minimum contacts as a way to ground jurisdiction, but it didn't supplant consent and other traditional means of establishing jurisdiction. That's what Justice Scalia's plurality opinion for this court says in Burnham. International shoe can live alongside those traditional means. So I don't think there's anything in international shoe that's inconsistent with consent by registration, which, again, is why no court in the United States found one of these statutes unconstitutional until 1971. Mr. Keller, I'm wondering what kind of consent you're talking about. So you say consent by registration. Let me give you a hypothetical. Let's say instead of the state saying registration is a foreign corporation, it instead said in its long-arm statute doing business in the state. Is doing business in the state then consent by doing business? No. Pennsylvania Fire, the holding of Pennsylvania, excuse me, Pennsylvania Fire draws a line between constructive consent, deemed consent, the old Wayne Simon line of cases, and actually filing the piece of paper. Now, that might seem like a formalism, but formalism has an appropriate place in the law in this particular area. Well, I guess I don't understand that. I mean, it's true registration is filing a piece of paper, but that piece of paper does not say, I mean, there's another question if it did say, but it doesn't say, I agree to be subject to jurisdiction based on my general activities in the state. All the piece of paper does is comply with a state law requirement that everybody who does business in the state has to make their identities known and say, here I am, I'm doing business in the state. So where is the consent to jurisdiction in that? I think it's a little bit more than that. Historically, some of the statutes used words like consent or assent, but admittedly, most of them didn't. They said you have to file a piece of paper appointing an agent to accept service of all valid process with all writs and all claims that could be brought against your company by a plaintiff. You have to file a board resolution. When you file that piece of paper, that act of formality coupled with knowledge of the law, which nobody can contest that Norfolk Southern actually had here, is good enough. I guess what I'm suggesting is that this whole idea of consent by registration came about because it was necessary in a pre-international shoe world. In other words, there was no way to assert jurisdiction over foreign corporations for even the acts that they committed in the state. So somebody had to make up a fictional, like, here's an idea, we'll use fictional consent. When they register, even though they're not actually consenting to jurisdiction, we would deem it to be consent so that we can assert jurisdiction. Then international shoe, as the Chief Justice says, comes along and obviates the need for any such doctrines. Yeah, so I still respectfully disagree. Your precedent says that there's a difference between filing the piece of paper and not filing it. The not filing it but still doing business in the state, that's the fiction. That's the deemed consent. Filing the piece of paper matters. And let me offer two illustrations why I think that are related. Filing the piece of paper is actually important and it's something that we take into account in this area of law. Let's look at your general jurisdiction jurisprudence, the modern doctrine, Daimler and Goodyear. Everybody understands the contacts-based approach to where the company has its principal place of business. Imagine a California company with all California employees from the CEO down to the janitorial staff, all California sales, all California contacts. Not a single one of them has set foot ever in the state of Delaware. The only contact that's going to ground jurisdiction for general jurisdiction purposes if they are incorporated as a company in Delaware, if they filed a piece of paper there, that formality matters. If they hold themselves out as a Delaware company when they really aren't, they haven't gone through that formality, I'm not sure this court would say that any suit under the sun could be filed in Delaware and there would be general jurisdiction. Let's take another related example. Norfolk Southern is here and has standing before this court as a corporate person because it filed a piece of paper in Virginia that's probably collecting dust in the Virginia Secretary of State's office. Filing that piece of paper is how Norfolk Southern was born as a person. It's not born like us flesh and blood people, obviously, it's a legal fiction. The paperwork matters, that indicia of formality historically has significance and that's a very useful thing in the law. Can you prevail on your historical argument without showing a settled practice of upholding jurisdiction by consent in what you called foreign-cubed cases? I think I can, Your Honor, because even though it was a rare circumstance, the fact that it was foreign-cubed versus foreign-squared didn't matter in 1868. The only thing that really mattered was consent. And let's again go back to the category of statute that my friend doesn't really lay a glove on. There are many states like New York, for instance, that said if you're a resident of our state, the company has to consent to general jurisdiction. And everybody thinks that that's okay. The only time that's going to matter is if the suit doesn't arise out of context in the state. Otherwise, those residents are in the same situation as the non-residents. So if that's okay, what's the constitutional reason that states like Pennsylvania have to discriminate against out-of-state residents? There is a long-standing principle in Anglo-American law that the courts are open to everyone. Now, I'm not saying that New York wasn't allowed to discriminate. No one has challenged that they could discriminate in favor of their residents. But lots of state constitutions make access to the courts a fundamental right, and they take it as a point of pride that it's open equally to everybody. So I don't think states like Pennsylvania and the many, many others that allowed foreign-cubed situations were violating the Constitution when nobody thinks that states like New York were violating the Constitution. In your view, are there any limits on a state's authority to condition access to its market? There are limits. The unconstitutional conditions doctrine is a real doctrine. I think the focus of this court's jurisprudence has been on substantive limits, so depriving someone of their equal protection rights or their rights to private property or their rights to the First Amendment. I'm not aware of any case, and we can talk about Morse, if Your Honors would like, as my friend's counterexample, but I'm not aware of any case that applies the unconstitutional conditions doctrine in the procedural realm. I'm not going to tell you you could never do it. There could probably be some example that's so egregious that you would be willing to extend it to that context, but it hasn't been done, to my knowledge, in your jurisprudence. I'd like you to talk about Morse. I was going to ask you about that. Why isn't that counter to your position on unconstitutional conditions? Because, respectfully, Your Honor, I think Morse is not an unconstitutional conditions case. It's a preemption case. It's an early example of so-called objectives and purposes or obstacles preemption. What Morse was doing was it was interpreting Section 12 of the First Judiciary Act of 1789, where Congress said, if you're a defendant, you can remove, if there's $500 in controversy and there's diversity. And what the court essentially said in Morse is that's both a floor and a ceiling, sort of a situation like Geier. And so any restraint on someone's ability to remove where those two conditions are satisfied is a violation of the Constitution because of Article 6, Clause 2, the Supremacy Clause. Here's proof, I think, that that is correct. Go through the following thought experiment. Imagine that the First Judiciary Act of 1789 had said, you can remove if there's $500 in controversy or diversity, unless you've struck a deal through a registration statute with Wisconsin not to remove, in which case you can't remove. I think there's little doubt that this court would not have said, Congress is not allowed to restrict the defendant's right to removal in that way. You don't have to go to the full limits of Article 3 diversity jurisdiction. We know that because of the amount in controversy requirement. We know that because of Strawbridge v. Curtis. Congress regularly amends the situations to limit the amount of Article 3 jurisdiction that would otherwise exist if you went all the way to what Article 3 countenances. So I don't think that Morse can properly be categorized as a true unconstitutional conditions case. And there are other clues of that in the opinion. The opinion says that you can't agree by contract to go to arbitration instead of court. This court has applied the Federal Arbitration Act many times, so that's obviously been abrogated. The opinion says you can't agree by contract to waive your right to a jury of 12 men. That has obviously been abrogated in a lot of different ways. So I don't think that Morse is actually an unconstitutional conditions case in the procedural realm. Mr. Keller, can I just ask you, because I might be looking at this in a very simplistic way, I'm thinking about waiver and whether that is really the easiest framing for what is happening in this case. I don't see necessarily a conflict between international shoe and consent insofar as I thought that this court had determined that personal jurisdiction is an individual right and that individual rights can be waived. And consent, as long as it's knowing and voluntary, is ordinarily the way in which people waive their individual rights. So am I just thinking about it in too simplistic a way? No, Justice Jackson. I don't think it's too simplistic. The reason I gravitate towards the word consent is that's historically how courts referred to it. So that's why I prefer that nomenclature, but I don't think that that's too simplistic at all. That is, in a modern way, how we think about the personal jurisdiction right. It is waivable. That, by the way, is why there's no interstate federalism problem under insurance of Ireland. So I don't think that your framing is very far off from the historical framing. And therefore, there's no necessary conflict between the international shoe holding or determination. Because that's what you would have absent consent. That is correct, and that's what international shoe itself says. It says it's talking about the non-consenting corporation that can nonetheless be hailed into court whether it wants to or not. It leaves consent untouched. Counsel, when it comes to individuals, this court has said, to use your vernacular, triple cube situations are fine so long as you can tag the defendant in the jurisdiction. Correct. Under Burnham. So your friends on the other side have to come up with some reason for distinguishing corporations and why they get special treatment. And as I can discern it, they've got two lines of argument. One, it's just not fair because our consent is fictional, even if we are present and doing considerable business in the state. And second is that, unlike tag jurisdiction for individuals, you have a harder time finding statutes that support that historical tradition. And I understand your response on the second part. I'd like your response on both. But with respect to the second part, you point us to a number of statutes, but why wouldn't it also be relevant to look at how individuals were treated when we look at corporations? It's certainly relevant to look at how... Why should we distinguish between the two? Why is that even a relevant consideration? It's certainly relevant to look at how real flesh and blood people are treated. Obviously, the language of the 14th Amendment speaks to persons, and it doesn't create a higher grade of person or a person that's entitled to better constitutional rights because they were birthed by filing a piece of paper in Virginia, as opposed to being birthed by a mother at a hospital. So the constitutional text says that you shouldn't treat them differently. And modern notions of fair play and substantial justice suggest that you shouldn't treat them differently. Justice Sotomayor has talked about this, too big for jurisdiction. Now we're talking about too big for consent. I don't think that that makes any analytical sense. And my friend's essential response is, well, tag jurisdiction won't happen that often because it's tough to find the individual at the coffee shop at Starbucks or whatever where the process server can meet them. That's not really an answer to say, well, we allow tag jurisdiction, and it's really unfair, but it only impacts Mr. Burnham and a few other people. That logic as a constitutional principle doesn't have any resonance with me, respectfully. Mr. Cullard, I'd like to take you back to a question that Justice Thomas asked very early about do you recognize a kind of preexisting right here, pre-waiver, that is. So is there a right of a corporation not to be subject to general jurisdiction just because it does business in a state? Just because it does business in a state? In other words, none of the business gave rise to the cause of action, but there's a corporation that does business in the state. Is there a right not to be hailed into court for things that are entirely unrelated to the state? If the corporation did not consent, yes, there is. Once we have that, then it seems to me you are in unconstitutional conditions land, because here's the state saying, well, this right, we're going to demand that you give up this right to have access to our markets. So it's conditioning access to its markets on the waiver of the right, which you've just conceded, not to be subject to general jurisdiction for doing business. Yes, that is correct. I'm going to make a confession. I find this court's unconstitutional conditions doctrine very difficult. You and everybody else. I can't understand what the underlying principle is that unites all of the cases. Sometimes the greater power includes the lesser, and sometimes it doesn't. My first response would be history and tradition tells us that here the greater power includes the lesser, so it's not an unconstitutional condition. If that by itself is not satisfying. Sorry, I lost you. The greater power is? The greater power is the right to close down access to the market entirely, and therefore it includes the lesser power to say we'll let you in, but only if you consent. But that's the whole premise of unconstitutional conditions doctrine, that we don't get to say that all the time. Not all the time. Agreed. And that's my confession to the court. I don't know which times yes and which times no, based on some underlying principle, but here I've got history and tradition, and so I'd lean on that to say states clearly acted as if the greater power did include the lesser, and nobody suggested that that was unconstitutional. If the history and tradition alone doesn't do the work, let me point again to my friend's concession. He agrees that these statutes were constitutional with respect to claims arising out of the agent's contact with the forum. I know under modern doctrine that would have just been specific jurisdiction, but back then that was nothing. So the greater power definitely included the lesser for that type of consent, and it also included the lesser power to say consent to general jurisdiction for all residents of the state. So once you say the greater power includes the lesser in those two contexts, what's the principle that then says, but you can't take the further step of going to a four-and-cubed situation? You might be able to come up with something, but I would suggest it's a little ad hoc as opposed to based on bedrock principle. Do you still have the greater power? That is obviously a negative commerce clause question, so I won't dodge your question. I thought the court's precedents made clear that the state does not have the right any longer to exclude out-of-state businesses from that state's market. I actually don't think that the precedent of this court is clear. So then do you think a state, as we sit here today, does have the power to exclude out-of-state businesses from that state? Conditioned on consent to jurisdiction? Yes, I do. How about delete the conditioned on? Does a state have the power, as we sit here today, to exclude out-of-state businesses from that state's market? It depends on what conditions they're imposing. So not always, but sometimes, and this would definitely be one of the sometimes situations. I'm happy to go more into the dormant commerce clause. I will. You're linking the two things. The premise of your answer to Justice Kagan's question, as I understood it, was that there was a greater power to exclude. Yes. Without any conditions. Just the state of Pennsylvania wants to exclude businesses from certain states from its market or from certain kinds of businesses from its market. Can it do that? Yes. So the reason I accepted the premise is because the unconstitutional conditions doctrine always assumes you have the greater power, and then it asks, can you nonetheless have this lesser power, even though you have the greater one? Your question is a separate one, which is, forget unconstitutional conditions. Are all of these statutes unconstitutional under the negative commerce clause? The first point I'd make is, respectfully, that has not been briefed by myself, by my friend. It's an issue for remand, as Professor Sachs says. So I would suggest that we not get into in great detail the dormant commerce clause when the actual litigants to this case or controversy will have an opportunity to do so as remand. I would have thought your response would have been pretty simple, which is, there may be unconstitutional conditions doctrine, but one thing that can't be a problem is treating corporations on par with individuals. Doesn't that cut the Gordian knot? I think it does. And it also cuts the Gordian knot to say- I mean, tank jurisdiction was always permissible since time immemorial for persons. How can it be unconstitutional condition to say a corporation must abide by more or less the same rules as we require of individuals? Not only that, Justice Gorsuch, but also under Pike's balancing, we will show- Oh, goodness, Pike balancing. Don't worry, you'll like the rest of my answer. We'll see. Under Pike's balancing, the purpose of these statutes was to put foreign corporations on the same footing as domestic corporations with respect to the jurisdiction of the Commonwealth's courts. So I think that it would pass modern doctrine. I will also say, Mr. Mallory reserves the right to argue below that there is no dormant commerce clause and your precedent to the contrary should be reversed. So you're saying that it's the same- it passes unconstitutional conditions doctrine because it treats corporations historically both like persons and domestic corporations. Correct. Can I also ask about, just as a factual matter, it's not a total exclusion in this case, correct? That is correct. So it's just related to intrastate business, the condition. Also correct. Thank you. Are there any natural persons who are present at the same time in all 50 states? Of course not. If excluding a foreign corporation from the state would violate the dormant commerce clause, can you prevail? I can here, and you can say that the due process clause- That really wasn't the question. Of course not. If these statutes violate the dormant commerce clause, then they're unconstitutional under the dormant commerce clause. No, I'm not talking about this statute. I'm talking about a statute that simply bars foreign corporations from operating in the state. Would that violate the constitution? No, not based on the original public meaning of Article 1, Section 8, and Article 6, Clause 2. Yes, potentially, under your precedent. One more question along those lines. The Solicitor General cites Davis v. Farmers Co-op Equity Company, 1923, which held that a registration statute similar to the one in Pennsylvania, FIRE, violates the dormant commerce clause. You didn't address that in your brief. Do you have anything to say about it? I do. The reason I didn't address it in my brief is because, again, my friend didn't bring up the negative commerce clause at cert or on the merits, and obviously we're litigants to a case or controversy, and the United States is a very persuasive friend of the court, but only a friend. But I'll address it now. The negative commerce clause precedent in this area is muddied. Professor Sachs talks about this in a cogent way in his amicus submission. You are correct that there is that case that the United States cites. There's also the Turt case, which is a subsequent case that distinguishes that earlier case. I think Turt is 1932, and it says in a situation where you have a railroad that has actually filed the necessary paperwork, even though I believe that was a foreign squared situation, not a foreign cube situation, there is no negative commerce clause violation. It's a very terse opinion. Once again, I'll be honest with the court. I can't actually understand what the distinction is that the court is drawing, but it distinguishes it. It's the later in time precedent of this court, and then a lot of this negative commerce clause jurisprudence doesn't really keep getting applied to these registration statutes because there's a regime shift with international shoe. So that's the state of the dormant commerce clause vis-a-vis registration statutes in the 1930s. Norfolk Southern is a big corporation, and big corporations like that can litigate any place in the country. So the practical consequences for them may not be so serious, but all corporations are not big entities. So take the case of a small company, a small corporation, someplace far away from Pennsylvania, and they ship some products into the state based on Internet sales. Put aside the question of specific jurisdiction. What are the consequences if all of the states can condition the shipment of some products into the state, which they regard as doing business into the state on that little corporation's consenting to general jurisdiction? Yeah, so it's not clear that that small business would actually have to register under Pennsylvania statute, but I'll concede to not fight the premise of your question. Pennsylvania could amend its law and actually require them to register. I wouldn't back away from that. The consequence is they'll have to make a choice. Are they willing to subject themselves to the general jurisdiction of the Commonwealth's courts or choose to forego Pennsylvania's market? And I recognize the policy implications of that, but sovereigns have this prerogative, and it hasn't changed since 1868. Thank you, counsel. Just one question. The price of doing business in Pennsylvania is to consent to jurisdiction. What if the price were $100,000? There's no historical precedent for that. Well, but maybe the Pennsylvania statute is historical precedent for that, because the required consent could, in many cases, this one, for example, result in financial consequences to the corporation. Why not just have the consequences up front? Let's put the $100,000 and however many millions Pennsylvania will be able to extract into some fund to help people who are injured by out-of-state corporations. Can I ask a question about your hypothetical, Mr. Chief Justice? Okay. Okay. Thank you. I appreciate your indulgence. Does the state require domestic corporations to pay the same penalty or fine? That would probably be unconstitutional under Hanover Fire as a violation of the Equal Protection Clause. I still don't think it would be a due process violation, but it would be an equal protection violation. But what is the difference in substance? Because being sued in Pennsylvania is going to increase the costs on the corporation, particularly if it becomes an attractive forum, since a lot of corporations will have had to register. I'm not sure whether it will increase the costs. That's an empirical question that I admittedly haven't analyzed, but I think it's a very different thing to say you're going to be subject to the jurisdiction of our courts. Pennsylvania has a Republican form of government and guarantees that the oldest continually operating court system in the United States is going to mete out impartial justice and saying if you want to do business here, it's 100 grand, but we don't impose the same requirement on domestic corporations. I think that's different. Thank you. Justice Thomas? Justice Alito? I have just a couple of questions. The complaint notes that the petitioner lived in Pennsylvania from 2005 until his retirement. And that he was diagnosed with cancer in 2016. Was he diagnosed in Pennsylvania? No. He wasn't treated there. So this is ‑‑ okay. That's number one. Number two, you've answered that we shouldn't address the dormant commerce clause because it wasn't addressed by the court below, and I accept that. But how about the unconstitutional takings condition? The constitutional scholars who have put in a memo here, Professor Sachs goes on the dormant commerce clause in support of that. The constitutional scholars say that there is an unconstitutional condition if there's no sovereign interest that is served by a condition. Do we have to deal with that here? And why wouldn't we deal with that here? What's your answer to that view? Though I think the dormant commerce clause is separate, and I appreciate you accepting that that is for remand, I do think you have to deal ‑‑ I don't know if I've accepted it. I accept your answer. I was getting too ambitious. You accepted my answer. I do think you have to address, Justice Sotomayor, unconstitutional condition. That issue has been properly joined by the parties. I think you should, again, I very much appreciate the green briefs, but for the most part, the litigants to the case of controversy should define the scope of the unconstitutional conditions issue that you address. But I don't see how the sovereign interest principle applies with respect to consent to personal jurisdiction. Insurance of Ireland, I think, makes this point very clear, that once you've consented, the sovereign does have an interest in adjudicating the dispute. And I think it's notable that that opinion for the court was penned by Justice White, who's the same Justice White ‑‑ I'm sorry, which case are you referring to? Insurance of Ireland. Same Justice White, of course, who penned Worldwide Volkswagen, which has the common language about what the due process clause means as an instrument of interstate federalism. He says, yeah, but that doesn't apply when we're talking about consent, because once you've consented, whether it's waiver or other language. You know, in equal protection, a state can impose a condition if it has a rational basis to do so. Correct. All right? Tell me what the rational basis is for requiring consent when there's no sovereign interest. I accept that the sovereign interest might get you past specific jurisdiction needs or minimum contact needs, et cetera, because that's pretty clear. Yeah. But what's the rational basis for this? Forgive me for interrupting you. This answer is going to sound old-fashioned, but sovereigns often thought that they had a very compelling interest in opening the doors to their courthouse for anyone, resident or foreigner, and they would mete out justice if they saw a wrong and attempt to right it. That's one of the great gifts of the Anglo‑American legal system. I think it's one of the great gifts of our independent judiciary. Many state constitutions write that in as one of the fundamental rights of persons, that the courthouse doors are going to be open to anyone. So the state's interest is we want to give our residents a forum against these dangerous railroads or these insurance companies that do things nationwide, even if it has no connection to our forum, and then exactly as you said, rational basis, this isn't strict scrutiny, and we're going to stay true. Except you just gave it away. Certainly the constitutional scholars talk about the fact that if a jurisdiction wants to give its residents a forum, that makes eminent sense. But he's not a resident of Pennsylvania, and this cause of action had no contact with Pennsylvania. So where's the sovereign interest in opening up your forum to an out‑of‑state plaintiff whose cause of action has no connection to the forum? Respectfully, I don't think I've given it away. I think that I've then said the state has a sovereign interest in treating all people equally and not discriminating against out‑of‑state residents. So we're not going to create special privileges for our own residents and give them a better access to our courts. We're going to give everybody the same thing based on longstanding Anglo‑American principles of law. Thank you. Justice Kagan? Mr. Connolly, the clear effect of a ruling in your favor would be to gut Daimler and Goodyear, and you might even say effectively overrule them. And even beyond that, for I think many of the justices who joined those decisions, they were taken to represent a principle that had existed since international shoe. They were not new things. They were just a recognition of international shoe's approach to the problem of jurisdiction. And I would say that that approach is very inconsistent with what you just said with respect to federalism interests where the approach for, you know, how many years has it been, 80 years, is Pennsylvania does not have a state interest here. Virginia is the state that has an interest in this litigation and also inconsistent with international shoe's approach to fairness which suggests in line with Justice Alito's questions that it's not fair and reasonable to haul any company into the court of any state on any ground even if it has nothing to do with the company's business in that state. So I guess this goes back to the Chief Justice's question of you're taking this back to the enactment of the 14th Amendment, but for almost a century we've lived under rules that are entirely different from the ones that you're suggesting we now adopt. Yeah, so a couple of responses. Justice Kagan, I'll confess at the outset I'm a bottom of the slippery slope kind of guy and my first argument is originalism. But let me try and put your mind at ease. I am not suggesting that we overrule Daimler and Goodyear. Only my friend is asking to overturn precedent today. We are not. And I don't think that it would actually gut those opinions. It would definitely change the jurisdictional landscape. But I think big businesses in particular, the ones that are national in scope, they are capable of making choices about what they're going to do in the wake of rules that are embraced by policymakers. And we see this all the time in our highly charged political environment where both political parties are doing certain things at the state level and corporations are saying that's not in keeping with our values so we're going to take our stuff and leave. They've made a free choice to do so in view of those policy disagreements. Corporations, I think, are not particularly large ones, these hapless babes in the woods. They are more than capable of explaining to the places that some of the green briefs describe as judicial hellholes. You know, one person's hellhole is another's nirvana, but put that to one side. They're more than capable of making their views known and they should. It's important that they make their views known. This may come as a surprise given my profession. I am not anti-business. I value the jobs and the tax base and the services that they provide to local economies, and they have every right to explain to policymakers why it would be a terrible idea to embrace Pennsylvania's rule. I'm not even sure I fully agree with Pennsylvania's rule, but it is completely constitutional and compatible with Daimler and Goodyear. Nothing will be overturned if Mr. Mallory prevails. This is Gorsuch. This is Cameron. A couple questions. Only Pennsylvania has a statute like this, correct? Pennsylvania modernized its statute, I believe, in 1978, so it does look unusual. As of today, it's a yes, isn't it? Correct. Okay. If you win, every state could have a statute like this, which would mean I assume that every business would be at home and throughout the country. I respectfully would just quibble with the nomenclature. I wouldn't call it at home. I would say they would make a choice whether to consent to do business in the state and therefore be subject to general jurisdiction. But yes is the thrust of the answer to your question. Okay. And Justice Alito's question raised the issue of whether you can win on the unconstitutional conditions issue if a state can't exclude out-of-state competitors from its market. I just want to make sure I understood your answer to that. I thought you said to him, under the precedent, a state can't exclude out-of-state competitors from its market, but under the original public meeting, the state could do so. Is that your answer? That is, and to make sure that I stated it correctly, I could win under the due process clause, which is the question presented here, accepting the premise that they're not allowed to do this under precedent and Pikes balancing doesn't go my way and lots of other things. If I lose under the dormant commerce clause in the Pennsylvania courts, of course I lose. And I will be filing for cert if we lose below. That is correct. And why soon Philadelphia? So as was noted by Justice Sotomayor, Mr. Mallory used to live not in Philadelphia, in Pennsylvania, and his lawyers are from there, the union lawyer who initially solicited for this case and then made a referral. Both of those counsel were in Pennsylvania, in Philadelphia. But I won't pretend for a moment that those ground jurisdiction. They have nothing to do with jurisdiction. Those contacts are not sufficient to create jurisdiction. We're relying on consent and consent alone. Without consent, we don't prevail. Thank you. Justice Barrett? So your argument about the original meaning of the 14th Amendment depends on a lot of statutes that you cite from the time. And let's just say that I might not read all those statutes the same way that you do, and one batch that I have some trouble with are the ones that have to do with services process. I don't think those necessarily represent consent to general jurisdiction, because having an agent who can accept process in a state could be, say, for a specific jurisdiction. Putting aside whether or not, you know, and the government says not, the ideas of specific and general jurisdiction, you know, I mean, sorry, the government says that, yes, those ideas of specific and general jurisdiction, unlike your position, did obtain at the time. Why do you think that we should accept your argument that these service of process statutes are like consent to general jurisdiction? Because service of process statutes require the creation of an agency relationship, and so I can't imagine a world where the corporation is just deemed to consent under those circumstances. If the board is passing a resolution saying we deputize Smith, we deputize Jones as the person who's going to be in the jurisdiction, who can accept service of all valid process for all claims, all writs, all causes of action, to me, that is a very clear indication that the corporation is consenting. They might not want to do it. They might prefer to do business without those strings attached, but they know what they are getting into in that species of statute, and historically, that's how courts treated them. Thank you. Justice Jackson? Yes. Going back to Justice Sotomayor's question about the sovereign interest, I sort of thought that the interest was apparent in the condition that so many people seem to have problems with. That is that a sovereign wants to open its doors, courthouse doors, to its residents if they have disputes with companies that are doing business in the state, that the doing business in the state part of it does the important work of making it related to the state as opposed to just having a statute that opens the courthouse doors to sue any corporation, period. I would think that would be the unfair, problematic, potentially unconstitutional reaching out to grab corporations, but to the extent that the corporation, as you say, is agreeing voluntarily, knowingly, to do business in the state, I would think the state would have a very significant interest in making sure that its residents have a forum to bring their lawsuits. Am I thinking about this in the wrong way? Not at all. I completely agree with you, Justice Jackson, but in the spirit of candor, I have to go a step further because Mr. Mallory is not from Pennsylvania. So absolutely for the residents. And that's why I think my friend doesn't challenge the statutes that say general jurisdiction for residents are fine, even if the dispute has nothing to do with the forum. Obviously, that wouldn't work under Goodyear or Daimler, right? I'm from Florida. If I get hit by a train in California, I can't just sue in Florida because I'm a resident of Florida, unless the train company has consented to that suit. But Mr. Mallory is one step removed from that. Again, in the spirit of candor, he's not from Pennsylvania. But I do think Pennsylvania has a strong interest in saying we're going to treat everybody equally. It doesn't matter if you're a plaintiff from here or a plaintiff from somewhere else. There's a longstanding tradition of our courthouse doors being open to all. Thank you. Thank you, counsel. Thank you. Mr. Phillips? Thank you, Mr. Chief Justice, and may it please the court. I think it's worth making sure we're all on exactly the same page in terms of the facts of this particular case. All we have here is a lawsuit by a non-resident of Pennsylvania against another corporation, against a corporation that is a non-resident of Pennsylvania, on a cause of action that arose outside of the state of Pennsylvania. And under the way this court looks and has interpreted general jurisdiction and Daimler, that would say that it would violate due process to hail my client before the Pennsylvania courts. The only basis on which the plaintiff argues you should ignore the precedent in Daimler is because there was a sheet of paper filled out by which my client registered to do business. Now, there's been a lot of talk about doing business, and there's no question that Norfolk Southern does a substantial amount of business in the state of Pennsylvania, but that's not what the statute requires. All this statute requires is that you fill out a registration in order to be able to do business in the state. Once having done that, you have then consented to general jurisdiction in all cases. So if you go back to Justice Alito's hypothetical of the single guy who's actually to take the case that the court used in one of the earlier decisions about duck decoys in Maine, if somebody wants to ship duck decoys from Maine into Pennsylvania, hasn't even done it yet, but nevertheless decides out of an abundance of caution, I'm going to register to do business in the state of Pennsylvania, what you're saying is under those circumstances, you have consented to being sued on actions that have nothing to do with Pennsylvania, and indeed in circumstances where you have not even done any business in the state of Pennsylvania. And my friend's argument on the other side of that is to say, yes, but Pennsylvania has this enormous interest in allowing everyone to access its courts, which is fine, except, first of all, in defense of this litigation, the state of Pennsylvania didn't defend this statute. And second of all, no other state has adopted a statute like this one at any time within the modern memory of people. And so, therefore, this state, this statutory scheme, stands alone. So to answer Justice Kavanaugh's question, is it alone? Yes. And if this court affirms the decision of the Pennsylvania Supreme Court, the only effect of that will be to end a statute that the state of Pennsylvania doesn't care about and that no other state has come here to defend under these circumstances. Mr. Phillips, I'm sorry, have you passed your time? It started flickering. Can't the same thing that you just said be said about tag jurisdiction? What sense does it make? Somebody's on a train between Washington and Boston and switches trains in New York and somebody tags in there. The answer to that is I don't know how much sense it makes. They come from two very fundamentally different traditions. Tag jurisdiction has been recognized for time immemorial, continues to be recognized both at the framing of the Constitution, framing of the 14th Amendment, and up to this day it continues to be. So it's not only the history, tradition, and the practice that tells you that tag jurisdiction is permissible. By contrast, corporations, while there were these statutes, first of all, if you read the Chamber of Commerce brief, it will tell you there's no statute and no case prior to the 14th Amendment that would cover what Pennsylvania does here. But even if you take the handful of the smattering of statutes that come out after that, that doesn't come anywhere close to the kind of tradition and practice that this Court relied on, or at least that Justice Scalia's plurality opinion relied upon in deciding that that was appropriate. And part of that is because, as somebody asked, corporations otherwise exist everywhere that they do business. And that is a fundamentally unfair approach, that there is this notion of interstate federalism, and that these are sovereigns, and that we have a right to be sued and have the exercise of coercive power in those states that have a legitimate interest in the resolution of the litigation. But why isn't that right connected to your consent in some way? Your narrative doesn't seem to take into account what I thought was common ground about the nature of this right, that personal jurisdiction is an individual right, it comes from the Due Process Clause and not Article III, and that personal rights such as this one can be waived. I mean, all the kind of background principles that you just articulate exist absent consent. It seems to me that you're suggesting that consenting to have a state court exercise personal jurisdiction can't happen consistent with the Constitution. Well, it can clearly happen. Obviously, we could have consented to this lawsuit. So why isn't it happening in a situation in which you knowingly file the registration, and it's clear from the law that when you choose to file the registration, you're thereby consenting? Well, I mean, that's not the normal way the court thinks about consent or waiver of fundamental constitutional rights. Typically, that's a more transactional inquiry. And if you look at the Irish case and Justice White's analysis of consent, this is not the kind of consent that's ever been used. And indeed, if you look at the Pennsylvania statute, the Pennsylvania statute says that you can be sued in Pennsylvania for consent to the extent of your consent. I have to invoke that provision. It didn't say there was consent. Well, I understand, but why does it matter? I guess I don't see the difference between Pennsylvania having a law that says if you would like to do intrastate business, you have to register, and per the registration, you are consenting. I don't see the difference between that and Pennsylvania negotiating with each individual business, but standing to its term, this is a term in the agreement. You're going to do business, and this is what we require. In fact, I think it seems fairer to have it be the law applying to everybody rather than a transactional thing, business by business. So I don't think, I mean, I understand that point. My response remains the same, which is that's not the way the Court normally thinks about waiving constitutional rights. It's not the way anybody thinks about consent to personal jurisdiction. But the flip side of that is, and that's the unconstitutional conditions problem, is that, okay, if you think this is consent, then the question is, is that an unconstitutional condition? And since we have a right not to be sued in Pennsylvania on actions that have nothing to do with Pennsylvania, insisting that we have to waive that right. Right, but we don't ask that unconstitutional conditions question in all of the other situations in which people waive their rights, very, very significant rights in their interactions with the government. I'm thinking about all of the criminal law rights that came up in the context of the briefing here, where a state will condition your, you know, getting a lesser recommendation at sentencing, for example, with you giving up your right to a trial, giving up your right to appeal. I mean, those are really significant things, and the Court apparently doesn't ask the question, is an unconstitutional condition happening in that circumstance? So why would it do that here? Because under those circumstances, and generally, you know, those are the kinds of waivers you have to do in an open court that are knowing and voluntary, and that's a choice that the litigant makes under those circumstances. So you're saying you had no choice. It wasn't knowing and voluntary. If we were going to do business, well, you know, I don't want to play the railroad card, but the reality is that my client was doing business in Pennsylvania long before this statute was enacted, and will be forced to continue to do business long after. Let's put it this way, if I might. I'm sorry to interrupt, but if we're worried about fairness of consent and knowledge, there's no doubt the railroad understood by filing that piece of paper that it was subject to this law. Right. Okay, right? Right, although I might have thought that the statute could be construed more morally. Sure, the right to bring the suit, of course. And we would have had that. Yeah, this argument, I understand that, but you understood the law. And isn't that a far way down the railroad compared to the individual in Justice Alito's hypothetical who's traveling on a train who has no idea about tag jurisdiction? So why is it unconstitutional conditions when we're talking about corporations but not persons? So it's important to recognize, right, the complaint in this case doesn't allege that we are a large, knowledgeable corporation. It says simply because we filed a form that that's sufficient to say that all those other things don't count. But if we're going to treat corporations and persons alike for purposes of fairness, abstract notions of fairness, why is it any less fair to treat corporations as subject to consenting here if we treat individuals as subject to jurisdiction on a tag basis? Because you're comparing apples to oranges. I mean, it does seem a little bit like due process Lochnerism for corporations here, doesn't it? I would never say that, Your Honor. Oh, I know you wouldn't. Oh, but what it looks like is that there is a fundamentally different historic tradition dealing with individuals than there is with corporations. That may be good or bad, but it is a fact. So on that, if corporations are really special, how about the foreign squared circumstance? OK, what if we had a Pennsylvania resident, OK, suing about out of state events against your company, your client? What then? Would that be permissible consent in those circumstances? I mean, this court has pretty consistently said that the inquiry under the due process clause with corporations is to look at the relationship among the defendant, the state and the litigation. And I've just given you this. That the plaintiff's residence doesn't play a role in that analysis. So the answer, I think, would be that would be the same. But obviously, that's not the case. The same being no, that that consent would be insufficient despite the historical tradition there. Well, I don't I don't know. I mean, we have to look at that historical tradition in the same way we look at this. That's why I'm asking. I haven't analyzed the plaintiff's cases as carefully, you know, whether the plaintiff was a resident, as I have all of the other cases. It's possible that consent there would be permissible in your view. I doubt it because I don't those statutes didn't you know, there's no tradition that lived on in those cases. There are a number of states that have those statutes today. There are a number of states who have those statutes today and continue to enforce them. I'm not sure that I don't know how much evidence there is about the extent to which those are continuing to be enforced, whether they've been challenged. My guess is that a lot of defendants decide not to fight on those grounds. But that is a different historical. But I guess what I'm asking isn't isn't maybe I should extract from my question. It is possible that consent jurisdiction would be permissible in some circumstances, even under your theory. Yes, it is. So if that's true, if that's true, this doesn't implicate Daimler or those cases at all. Well, we're dealing with no consent, no question of a consent jurisdiction. Consent jurisdiction could exist alongside international shoe here. Justice type jurisdiction exists alongside personal jurisdiction and individual cases. Right. But the truth is the same is true for specific cases where the where the specific defendant has has in fact consented, comes in and defends, enters into an agreement with the party to defend under those circumstances. Of course, consent can, in fact, live in the in the international shoe world. But that's not the circumstance we're talking about here. I think the first line of defense ought to be this is not consent in the sense that anybody thinks about consent. And to get to the point where you say you say that this is consent in the way that you normally think about it, you have to look at the history and the tradition. And if you look at that history and you have a smattering of state laws that tell you something, I think Justice Barrett was right. I don't you know, service of process, I would I would argue, doesn't get you home because it's pretty clear under those circumstances that there want to make sure that if they have one of their residents injured in their state or anybody injured in their state, that they can respond to that and again, open the courts. I'm sorry, counselor. I think I'm now finally understanding. You don't accept the S.G.'s position that that takes. Well, I think you admitted that historical case law permits consent by registration to cases arising from doing business in the state, correct? No, not if the case arises from something that happened in the state. If there's an injury, but you don't need consent. Exactly. So those statutes you're saying are unnecessary. Having consent statutes that require you to have. Right. I think that's why those statutes went into disuse. So what you're basically the position you're taking is even when the state has a separate sovereign interest, the way the government has argued, like giving its residents a forum, you're basically saying due process would not permit that express consent. Well, actually, Justice Gorsuch, I would have to look at the historical pedigree by which you got there. All right. Can I ask you, you know in Daimler that I disagree with the court's jurisprudence in the non-consent. I'm hoping you'll come around, Justice Sotomayor. It's very doubtful. And I'll tell you why, because your case shows it to me. We have one of the amicus that tells us that you had more miles of railroad track and more employees in Pennsylvania than any other state, even Virginia. So except for the fiction of you having your incorporation in Virginia and you choosing artificially to say this is my principal place of business, in fact, you are doing the most business of anywhere else in Pennsylvania. So what logic does it make to me to say that you cannot consent, because you were already doing business in Pennsylvania, you had three railroad yards, you had miles and miles of trains and miles and miles of employees. How can I say you were coerced into signing a general jurisdiction waiver? I can see where we might have a doctrine that says in an individual application there's coercion. But I can't see how we could say there's coercion for a company in your situation. Well, I don't think there's any question about the coercion. I mean, we are required to register in order to do business there. We were already doing business there. I'm sorry. You have already said the state can coerce you into signing a waiver for an accident that happens in Pennsylvania because they don't need the waiver. They don't need the waiver. They don't need consent. So you're basically saying there's no sovereign right to ask for any consent ever. Ex ante. Yes, I think that's exactly the position I would take. I would say after the event and the litigation that might arise, it would be perfectly okay. Can I make one other point in response to Justice Sotomayor, though, Justice Gorsuch? Please. I recognize that as a matter of judicial notice, you can say that Norfolk Southern has these contacts with the state of Pennsylvania, but realize that none of that is in the complaint in this case. There is no allegation of anything other than that we do business in interstate commerce. And, therefore, the only basis on which jurisdiction is invoked in this particular case is the fact of having filled out a registration form. So I would argue that even if you individually want to think about a case somewhere down the line where that's the issue, I would say in this particular case those facts are irrelevant to the proper outcome of this because that's not the theory on which the plaintiff brought the case. Candidly, it can't be the theory on which the petitioner is going to try to set aside what the Supreme Court of Pennsylvania did in this case. I apologize. Thank you for allowing me. Mr. Phillips, would it make a difference to you if the registration form had been explicit about the consent? So, you know, you pointed out, listen, all we did was fill out a registration form. Justice Kagan pointed out earlier to your friend on the other side that it might be a different case if there was a form that had some explicit consent. Would it matter to you? No, it wouldn't matter to me. I mean, it would make it more arguable as to whether the consent existed. It would still put you squarely in a position where it's consent that's extorted by the state in order to litigate issues where the sovereign has no interest because there's no context. What if the state gives a benefit and says corporations that consent to general jurisdiction, we're going to waive the registration fee, let's say it's $1,000. You don't have to pay the fee as long as you consent. At the end of the day, I mean, I don't know at what point you can say that it sort of washes out. But at the end of the day, you're not allowed, you know, the unconstitutional conditions principle says you cannot insist that we give up our right not to have to be hailed into court by the coercive powers of the state of Pennsylvania. Why is that insisting, Mr. Phillips? I don't understand. I mean, it sounds like an exchange. It sounds like the state is saying if you would like to do business in the state, you don't have to do business in the state. You can, as your friend on the other side said, make a choice. You don't have to come here. So it's not coercive. It's just a term in the agreement that we're making with the businesses that come to our state. And I understand it's not negotiated individually, but surely a business who doesn't want to be held to that standard could go to the legislature and ask for an exemption. I mean, you have options to try to get around it if you would like to, but you don't have to do business in the state. So why is it coercive? So, again, I'm a little reluctant to play the railroad card here, but it's not as though we actually have a choice whether or not we're going to do business in the state of Pennsylvania. The federal government will require us to continue to do business in the state of Pennsylvania, and the state of Pennsylvania will, although that doesn't defend this statutory scheme here today, the state of Pennsylvania under the plaintiff's theory is that that requires us to give up our right. But here it's only intrastate, though, right? I mean, you just articulated an intrastate circumstance where the federal government is going to make you continue to go intrastate. But I thought the condition here only related to intrastate business. Am I wrong about that? Well, it doesn't require you to do business at all.  The waiver extends only – the condition only relates to companies that want to do intrastate business. That's what I thought. No, all it talks about is a foreign corporation that's registered to do business. And under the long-arm statute, then you're subject to this. I mean, the idea that we voluntarily accepted this when we checked that box simply is not the way I think of waiver and consent under any circumstance. But if it is, if you think of it that way, it's still an unconstitutional condition then. Justice Thomas? Mr. Phillips, I'm still – I'm just not very good at metaphysics. I'm not very good at physics either. Well, no, I was good at physics. You're way ahead of me. But the – you said that if you had consented it, you could consent to jurisdiction. Yes. There's such a thing. So there's – but you can't – so you're going – we're going back and forth between waiver and consent. Ex ante. You said that's what you're opposed to. And at some point, some of the argument, it sounds as though, well, this wasn't a voluntary waiver. And then at other times, it sounds, well, we can agree to this, and it's not so much a waiver, but it seems to satisfy due process requirements. What I'd like you to do for me is to tell me what the antecedent rights are that the railroad has that it could possibly be waiving, and whether or not you are waiving those rights or you are consenting not to assert those rights. It may not be a difference. But I think if we could at least be – you started by saying let's be on common ground. That would help me at least understand where we are a little better. So, Justice Thomas, the way I would articulate it is that it's our right not to be coerced to appear before a court except by lawful judicial power. And this court has made clear that lawful judicial power in dealing with a corporation is to be hailed into a court where it is at home. And whatever else Pennsylvania may be, just to sort of my own views notwithstanding, we are not at home in Pennsylvania. And that's the right we've been asked to give up, is the right not to be sued anywhere except where we are at home. So, is this really about whether or not you are voluntarily consenting or you voluntarily consented? Because you've said you could sign an agreement today or you could write a consent form or sign a consent form today, and you could bypass the jurisdictional problem. So, what the other side is saying, petitioner is saying, is you sign that form at Sandy, and that gets you there. You're saying, well, I signed it, but it's doing something more than I signed it for. Right. I mean, my first line of response would be that's not consent. This court has traditionally thought about consent in this context. If you look at the Ireland case where the court goes through all the versions of consent to personal jurisdiction, this one doesn't come up. But second, if I'm wrong about that, if you want to extend consent beyond those that were articulated by the court already, I would say that's an unconstitutional condition. What would it look like? If you had signed this, and I'll be done, what would that adequate consent look like? Well, what I think of as adequate consent is if we had defended this litigation on the merits in the Commonwealth of Pennsylvania. I mean, when we're talking about a form to do business in Pennsylvania, if there was a way to consent that is agreeable to you, let's say you're a generous railroad company, and you want to be fair to these litigants, even more than fair, how would that form look? Because what I'm hearing you say is this is inadequate. Well, clearly if all you have to do is check a box that says I registered for business, and that's why I would say that's not adequate consent. What would be adequate consent? The flip side of it is if being sued, I say, good, fine, I'm a generous railroad. I'm happy to be sued in a commonwealth that you're comfortable with. I can consent under those circumstances. Where in between those two, it's hard for me to say. Anything ex ante, I have problems with, Your Honor. Justice Alito? Well, I think the question is what you would say if Pennsylvania or another state required you as a condition of doing business in the state to sign something that says I will not contest personal jurisdiction in this state under any circumstances. And I would say that was extorted out of me as a condition of being able to do business that they had no right to under those circumstances, and therefore it's still unconstitutional. But I agree. It's harder to say that that's not consent, but it doesn't make it constitutionally permissible. So you really have to argue that this is a right that you can't be forced to waive. Lots of rights are waivable. Right. Most rights are not waivable by coercion. You can't put a gun to the person's head and say give up your Fourth Amendment rights or I blow your head off. A big part of Mr. Keller's argument is Pennsylvania Fire. We haven't discussed that at all. We rule in your favor without overruling Pennsylvania Fire. When I read your brief and the Solicitor General's brief, I count up, I don't know, five or six different potential ways of getting around Pennsylvania Fire. What's the best one? Well, I mean, you can say that there was a clearer document in that case, a la what Justice Thomas said, and that that's the basis for saying that there was consent there and there's not consent here. That's a legitimate ground. If you get past that, I think it's easier to say, frankly, that the court already overruled Pennsylvania Fire when it said in Daimler that if you look at the cases between Pennoyer and International Shoe that are based on the Pennoyer territoriality concept, those cases are no longer valid. This one would fall squarely in that camp. I'm sorry. Are we on the round-up? I'm sorry. I didn't hear the question. Well, Justice Lito, are you? No, I'm done. Okay. I'm sorry. I didn't realize we were on the round-up. My question was how? Daimler was a non-consent case. All of the cases that you rely upon for specific jurisdiction and general jurisdiction are all non-consent statutes, cases. So how can we say that overrules Pennsylvania Fire? I mean, what the court said in Daimler, and as repeated in other cases, is that all of the precedents between Pennoyer and International Shoe, all of them, that ultimately rely on some basic concept of territoriality. But not one of them has dealt with consent. That was always put in a separate category. International Shoe was basically about when there was no consent. Right, but I think the flip side of the question then goes to what is consent within the meaning of that, and I would argue that this is not consent. Mr. Phillips, one last question. Clearly, I didn't mean to overrule the idea that a defendant can come into court and say, fine, I'm happy to defend this case in this court. One last question. Hi, Paula Smith. I know that there are some of my colleagues who believe that every state will pass a law like Pennsylvania, but every state had that opportunity at the ratification, and very few did. Others had more limitations. I suspect today that very crowded courts are not going to want four-cubed cases to come to them and will continue having their laws as they are. And we have other doctrines like forum nonconvenience and choice of law that will present guardrails. I know in your brief you say they're not adequate constitutional guardrails, but if we say consent is consent and we don't find an unconstitutional conditions case, those doctrines will provide some guardrails, won't they? Well, to some extent, and I don't doubt you're right that it's improbable that all 50 states would necessarily adopt this view, but as the business interests have said to this court, the more concerning portion of this would be those few states that say we're going to open our doors to the huddled masses to come in yearning for a place to litigate in a popular forum from the plaintiff's perspective. And that, it seems to me, goes right to the core of the right not to be hailed into a court coerced against your will under these circumstances. Thank you. Justice Kagan? Justice Gorsuch? I just wanted to make sure I understand where we're at. Consent lives on after international shoe, right? Yes. Some version of consent. Some version of consent. In Pennsylvania Fire, the court found that consent that I think looks, let's just spot me this, looks very much like Pennsylvania statute was sufficient to establish consent. That was Justice Holmes. He was affirming discussions and thoughts by learned hand. And you're asking us to overrule that form of consent as extortion. Is that right? Yes, Your Honor. And my answer to that would be if Justice Holmes were here today, he would recognize that. He would get it right this time. Exactly. The benefit of a little better advocacy. I appreciate your candor. Just to follow up on Justice Gorsuch's question, when he says consent lives on, you mean if you're sued in Philadelphia and you show up and say, I have a right not to be sued here, but nonetheless, I'm going to let it go. And that's what you mean by consent lives on. That's what I think, yes. That's consent that lives on. And your point about consent and waiver more generally is that it's involuntary, it's coerced. The terms consent and waiver are not appropriate terms. That's not the way I think of consent. But that depends on, I think, on a premise that we were talking about or I was talking about with your friend on the other side, which is that you have a right to do business in Pennsylvania. And our precedents certainly grant you that right. Your friend on the other side said, actually, as a matter of original public meeting, a state could exclude out-of-state competitors from its market. That's not my reading of the Constitution or the history. But I want to give you a chance to explain why that's – I mean, I felt the Constitution in part was created to create a common economic market, and that was a key part of the whole enterprise. But he says no, that's wrong, and I want your response. I mean, three terms ago, this court in Tennessee, Wine Retail, specifically outlined that history and said you're not free to exclude foreign corporations from coming in and do business in your state, even in circumstances where you're talking about – But I think he's saying, well, you've said that, but that's not correct. But the court went through that entire history and said that that conclusion was completely consistent with that entire history and that, in fact, the framers would be horrified to find out that the states could balkanize the economy the way that my friend would suggest in this case. Thank you. Justice Barrett? Mr. Phillips, I just want to follow up on Justice Gorsuch and Justice Kavanaugh's questions about consent. So I get, you know, you're saying it's consent if you're sued in Pennsylvania and you actually show up, make an appearance, and defend against the suit. Are you really saying that you cannot consent in advance or waive your rights in advance in any way? I think if you enter into a contract – a true contract – I mean, that's another example that the court adopted where there's a contract between two private parties and you say you can choose the form in which you're going to have this brought. And even though that wouldn't be a form that I would otherwise have been permitted to be sued, that's a permissible exercise of that. But that's not what we're talking about. So it's when you're with the state. So you can't consent ex ante if the state is asking you to do so, even though you could consent not to object to general jurisdiction in a private contract. Right, because it's not the state asking you to. What about a tax break? Like what if Pennsylvania says you can come do business, any corporation can register to come do business in our state, but if you consent to general jurisdiction, we'll give you a tax break. It still seems to me you're asking us to give up a fundamental constitutional right under these circumstances. I mean, that's a tougher case to be sure, and it's not this case. I would say that's still not consent, even though you try to dress it up in a more attractive fashion. That's not the way this court has thought about consent up to this point, and I don't see any reason to continue the debate at this stage. I mean, all of the states have lined up saying we don't need consent as a mechanism for properly taking care of the interests that we need to take care of. And so a better course for the court to follow is to say this is not worth the candle. Justice Jackson? I had exactly the same question as Justice Barrett, and let me just ask another variation of it. What if the state or an interaction with the state is not really in it? We have the hypothetical is a good corporate citizen who says I'm going to do business in Pennsylvania. The state hasn't said anything about me waiving my right, but because I'm going to be here I would like to announce ex ante that if someone is injured or for whatever reason I'm going to submit myself to the jurisdiction of the courts. Is there a due process problem there? Can you waive it categorically ex ante not in the context of the interaction with the state? Well, I would guess the question is whether or not that kind of a statement in the abstract is in some sense enforceable against you when the time comes and you're being sued on something that otherwise fundamentally violates your due process right. I would say I don't know how you would enforce that. No, no, no. I'm basically asking is that a right that can be waived? I'm trying to isolate whether it's the waiver that's the constitutional problem, meaning that personal jurisdiction can't be waived, or whether it's the conditional nature of the state asking you to waive it in the context of your interaction that's the problem. So my first position has always been that I would start with this isn't consent as the court has identified consent, but if you get past that, if you're comfortable with some variation either of the theme here or some other hypothetical and you still say there's consent, then you run squarely into the unconstitutional conditions problem, which is that we have a fundamental due process right not to be coerced into the state of Pennsylvania. So it's the conditions that's the problem. At the end of the day, yes. I'm totally comfortable with the court. If the court's more comfortable with that ground, I'm fine with that. Personally, I always start saying this isn't consent as this court has recognized it's an easier way to go, but I'll win on any basis you want. Justice Kagan? I just wanted to go back to Justice Barrett's hypothetical because I might have answered it the opposite way, and what I'm thinking is this. Your argument depends on some idea of a preexisting entitlement. Actually, there are two preexisting entitlements in your argument. One is that you have a right not to be sued when you're not at home on any old suit, and another is that you have a right to access a state's markets, and that goes back to Tennessee and Justice Kavanaugh's question. What you don't have is a right to a tax break. So what Justice Barrett has done in her hypothetical is to leave the world of entitlements and go into the world of something that you're not at all entitled to. So if the state says, hey, we're going to give you a tax break if you agree to be subject to jurisdiction, that's a different question. That's an exchange. That's a contract. That's fair and square because there's no entitlement to the tax break, but there is an entitlement to access every state's markets. I mean, I don't feel strongly. I mean, as I said to her, that's a different case. I mean, no state has come to us asking us to give us a tax break to operate within their state, and I don't know any state that operates that way. So I'm perfectly comfortable giving that up. On the other hand, I would take a hard look at that to see whether it's coerced. Thank you, Mr. Phillips. Thank you, Mr. Chief Justice. Mr. Gannon?  Petitioner's theory of general jurisdiction on the basis of supposed consent is inconsistent with all of this court's recent cases about general and specific jurisdiction. It is also inconsistent with the principles underlying the court's cases because it would allow Pennsylvania to inject itself into a suit that implicates only other states' interests, and it would threaten international comity by doing the same thing to foreign corporations doing business in the United States. My friend says all that's irrelevant under the 14th Amendment's original meaning, but his reading is not supported by the historical record. In the latter half of the 19th century, this court repeatedly described corporate consent as valid for causes of action arising from in-state contracts and transactions, and many state courts in that era imposed such a limit even when statutes were unlimited on their face, as indeed the Pennsylvania Supreme Court did here. This court should also reject petitioner's jurisdictional free-for-all. I welcome the court's questions. We've had quite a bit of discussion about waiver and consent, and I remain confused. Would you be able to comment or to at least give us some clarification as to how you see consent in this context? I hope so. We think that, first of all, of course a defendant can waive the personal jurisdiction objection. The court held that in Insurance Corporation of Ireland, and so we know that this defense, this personal jurisdiction defense, is waivable when there is actual choice. The thing that is different here isn't that it's ex ante versus in an individual case. We think it's the fact that it's not an actual choice that's being made by the defendant. It's being done under the coercive pressure of the state that is otherwise withholding a constitutional right that the defendant would be entitled to, and that would be, as Justice Kagan was pointing out, first of all, the constitutional right not to be hailed into Pennsylvania courts to litigate a case that has nothing to do with Pennsylvania under Goodyear, Daimler, all of that, under the Due Process Clause. There may also be other constitutional rights under Dormant Commerce Clause, as have been discussed, but aren't within the scope of the question presented. Can I just ask you, though, because I take Justice Kagan's point, and I think it's a very good one, that we're talking about two different kinds of constitutional rights that are being implicated, but I thought that the right not to be sued was a due process right, and the right to access the state's markets was coming from, like, the Dormant Commerce Clause. It wasn't a due process right. And to the extent that you can waive the due process right, isn't that just what we're talking about here? So you might still have, as your friend on the other side acknowledged, some kind of dispute or debate over the Dormant Commerce Clause in the situation in which Pennsylvania is making it a condition. But it seemed to me, the reason why I'm so confused, and with Justice Thomas on the confusion about waiver, is that you are talking about not allowing corporations to waive the due process right that they have in this situation. And once they do that, they might still not, today Pennsylvania, might still not be able to do this, but it would be on other constitutional grounds, not because you are not allowed to knowingly and voluntarily waive your due process right. I take the point, Justice Jackson, and we certainly think that there is a due process right here that's sufficient in order to decide, on an unconstitutional conditions basis, that this is not a voluntary consent, that this is a coerced consent, and therefore isn't legitimate. The Court's cases in this area, the due process area, and even before the 14th Amendment, all of the cases dealing with the question of how to solve for the problem of an out-of-state corporation doing business in the States, they have asked about principles of interstate federalism. All the Court's recent cases take interstate federalism into account. Yes, but what do you do with the International Corporation of Ireland case, which made very clear that the due process right was a personal, individual, waivable thing, and the federalism part you're talking about was not really being protected by this due process right? Well, it is being protected by the underlying due process right not to be hailed into a form that has no interest in the suit. That doesn't mean that the defendant can't still waive it, and Insurance Corporation of Ireland acknowledged that there's waiver, and other cases have allowed form selection clauses. But if you waive it, you don't have the right anymore. But the point is that the right was not to be hailed into a forum that has no interest in the suit. Unwillingly. Unwillingly, but the question of consent is one that you can't just bake that in, as in the Court's case in Birchfield, the Fourth Amendment case. The Fourth Amendment was mentioned earlier. When you could consent to a search, or the blood draw, for blood alcohol testing in Birchfield, but the court held that it had to draw the line. Once it had concluded that you had a Fourth Amendment right not to be subject to criminal proceedings, on the basis of refusing to do a blood draw, the fact that you notionally consented to that blood draw wasn't going to evade your underlying Fourth Amendment right. And what I was trying to say here about the right that is at issue in all of the Court's cases that have continually recognized the importance of interstate federalism, even since Insurance Corporation of Ireland, not just Goodyear and Daimler, but all of this goes back, if you go back to the first important case that we cite, Lafayette Insurance Company, which is about the question of how to deal with an out-of-state corporation. That case is talking about whether it is inconsistent with, quote, which secure the jurisdiction and authority of each state from encroachment by all others. This has always been about recognizing that it's not just the individual defendant's right that is at stake. The original question is whether the state has a sufficient interest to inject itself to entertain this dispute when maybe it should be entertained by other states. And so here we see Virginia has appeared and said, this shouldn't be a lawsuit in Pennsylvania. It should be a lawsuit in Virginia. Mr. Gannon, so I just have three questions. First, the way I understand it, you're saying this is coerced consent and therefore isn't real consent. That would seem to be counter to the Pennsylvania fire Justice Holmes learned at hand. So we'd have to overrule that or somehow say it's died of its own weight or something, right? Because that was the statute pretty much like this. We don't dispute that the statute in Pennsylvania fire was sufficiently similar here. We think that in many ways, Pennsylvania fire has been left, has been superseded. We have to do something with Pennsylvania fire. Yes, we agree. We think that it doesn't have vitality under multiple strands of the current of the court's case law, including some that predate international shoe. Got it. That's one. Two, Justice Barrett's hypothetical. If there were a benefit provided to the out-of-state corporation in exchange for signing this form, would that take care of the problem? And if so, won't Pennsylvania just and other states just enact that? And we'll be right back here three years from now. Well, I think it will depend on how coercive the condition is. And so under the gun constitutional conditions doctrine, as the court summarized in its Goon's opinion, there needs to be a nexus and rough proportionality between the condition that's being imposed and the right that's being waived. That would be a question for another day that we'd have to decide, and it might be OK. It might be OK, depending upon what is the nature of the gratuity. It's not something that you otherwise have a right to, I take the point of the hypothetical. But then there still is the question of whether it's related. And so in the case of all the waiver of criminal rights, individual trials, which Justice Jackson mentioned earlier, those are all related. This is a condition that's completely unrelated to the lawsuit. By definition, because it's a four-and-cubed case, there's no relationship between the waiver and the right at issue. That leads me to my third question. Let's suppose this were a four-and-squared case rather than a four-and-cubed case. And so Pennsylvania had a resident who had been injured. Would the consent here then have to be analyzed differently? I think potentially yes. If the plaintiff were a resident, there probably still needs to be, under the court's recent cases, there probably still needs to be more of a state interest than just the residents of the plaintiff, because otherwise it's an easy circumvention of Goodyear, where the victims to the bus accident in France were actually North Carolina citizens, and other cases where the court has emphasized the ties between the defendant and the forum. And there aren't just interstate federalism concerns there. But there would come a point somewhere between everything happening in state and everybody being in state, and everything happening out of state and everybody being out of state, where consent like this, under your theory, would be permissible. Yes, we have not taken a position on that particular question in yes, so it might be permissible. And like Mr. Phillips, we haven't analyzed all of the historical cases for that particular thing, because we thought that that was not what was at issue in this case. But I would note that a case like Old Wayne, where this court, just a few years before Pennsylvania fire, is talking about the problem of what to do with a contract of insurance that was sold in another state, that was an in-state resident, and the court still did not think that was enough. The court said we're not going to distinguish between in-state and out-of-state residents for purposes of this suit, because the contract was transacted out of the state. Your bottom line is like respondent. There's no real consent. We're just going to go back to general and specific jurisdiction, because I don't even know where you're getting the possibility that a state could require consent if it had a specific interest. You're basically saying, I don't see where the Constitution says that, that you can't waive personal jurisdiction, because that everybody has accepted since the founding of the country, correct? Yes, we have no dispute that defense can be waived, notwithstanding the fact that the underlying constitutional right... Now you have a different argument that either the Dormant Commerce Clause, I think, or the Unconstitutional Conditions Doctrine stop a state from saying to a corporation what? It stops the state from saying to the corporation that we're going to hold up something that you have a constitutional right to, unless you make this choice that isn't a choice. There's a lot of states who bar certain products from a particular state. I think we look at those as equal protection issues, so you can bar states from doing business. We've said you can't do this kind of condition for interstate commerce, so the railroad could continue its interstate commerce. The only thing it can't do is intrastate commerce, according to Pennsylvania Fire, correct? Well, I mean, I think that that question probably gets more into the question of what the right answer is under Dormant Commerce Clause, which nobody's quite taking a position on. Exactly, and that's why I keep going back to, I don't know where you get the right not to be sued on the basis of consent, and I don't know where you find a right to unfettered access to a market. There's all sorts of fettering that we permit. You may argue that this is too fettered for some independent reason like the Dormant Commerce Clause, or is it unconstitutional taking, but I don't know that you can say that either right is so absolute that the state can't rely on consent in more circumstances than specific jurisdiction would permit, or general jurisdiction would permit. As my answers to Justice Gorsuch were trying to say, we acknowledge that there may be some circumstances that go beyond specific jurisdiction that still might be a problem for purposes of what that means for those cases, but we think that consent needs to be an actual choice, and when it's done with this coercion, it's not, and that doesn't mean that it can't be done ex ante. I think that the hypothetical in the reply brief that says, if the state said that a registration filed on blue paper would include this consent, but it didn't require registration to be filed on blue paper, is you could file on blue paper, you could file on non-blue paper. There's no pressure one way or the other. One includes consent, the other doesn't. We don't think that that would be a coerced consent. That would be fine, even though it's being done with the state's invitation rather than in a private negotiation on the side. We think that there can be ex ante waiver, but that it can't be coerced with the power of the state under the unconstitutional conditions doctrine that's going to require a question about whether there's a sufficient relationship between the right at issue that's being waived and the condition that's being imposed on it. In some other circumstances where we've looked at unconstitutional conditions, the coercion is coming from another aspect of the relationship of the sovereign to the individual. So it's not just that what is being asked in the context of the particular condition is so problematic. It's, you know, the federal government says, if you don't do this thing, we're going to withhold all of your Medicaid funding, you know, which is sort of like another way to hold the person over the barrel. What would you say if we thought that that was the quintessential circumstance, and that's not happening here, right? Well, I agree that that particular form of leverage isn't happening here, but our basic point is that when we're talking about a foreign cube situation, there isn't a sufficient interest in the state of Pennsylvania in this lawsuit in order for it to justify the waiver of the right of the defendant not to be hailed into this court when there aren't sufficient ties to otherwise justify the dispute being resolved there. Thank you, Mr. Dan. Justice Alito, any further? Justice Sotomayor? You know, I think there were sufficient ties. This is the state in which it does the most business. More business than it does in its state of registration or where it's incorporated, correct? I take the point, Justice Sotomayor, but plaintiff's rule is not limited to big corporations with lots of in-state facilities, and I don't think that there is... But that fact may affect another case and how we apply the doctrine there. That doesn't require us to generally... It does not come under specific jurisdiction in any individual case. Whether the consent by registration is sufficient to make the difference is a different question. But I also don't think that this is a situation where we're ever going to guarantee parity between individuals and corporations because tag jurisdiction is different for natural persons than it is for corporations. You can't get general jurisdiction over an out-of-state sole proprietor by tagging his salesman who happens to be in the state. And the case-length jurisdiction that the court's case is repeatedly recognized in the 19th century before Pennsylvania Fire is sufficient to solve the problem of how to deal with an out-of-state corporation that has wronged an in-state resident on the basis of business that actually occurred in the state. All right. Thank you, counsel. Justice Kagan? Mr. Gannon, the Solicitor General has a choice whether to participate in this suit or not. And so please don't take this as at all a criticism. It's genuine interest and curiosity. What is it about this suit that has made you decide to participate? In other words, what interests of the United States or dangers to the United States do you see at stake in this suit? Well, thank you, Justice Kagan. In the interest of the United States section of our brief, we pointed out not just that the excessive availability of general jurisdiction could cause international concerns for trade with the United States and our commercial interests, but also the petitioner had called into question the constitutionality of a federal statute. And so we thought that it was important to make sure that the court's decision here wouldn't implicate the constitutionality of federal statutes. We have several reasons at the end of our brief where we explain why the main statute that's been mentioned we think wouldn't need to be decided by the court here. It's a case that we think there that there's potential differences between the Fifth and Fourteenth Amendment, as the court has repeatedly mentioned and reserved the question most recently in Bristol-Myers. But even apart from that, we think that the Congress and the executive branch in the context at issue there have a greater ability to assess international and interstate considerations. So the interstate federalism aspect drops out. So we think that the rule would be different if Congress were to come in here and try to make different arrangements. The removal statute that was at issue, that was a right that was at Congress' behest. The interstate federalism issues drop out in a way when Congress is the arbiter instead of having individual states inject themselves into lawsuits that they otherwise don't have interest in. So those are some of the reasons why, even though I haven't been asked about that particular statute, we wanted to make sure that you heard our arguments in this case. Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, counsel. Mr. Keller, rebuttal? Thank you, Mr. Chief Justice. I won't use all five minutes. I think I heard my friend say that there's no statute prior to the 14th Amendment that allows this. There are so many examples, I don't have time to list them all, so I'll give you two of my favorites. The very first statute that we found, Virginia in 1827, this is the petition appendix at 251A. What I love about this statute is the legislature of Virginia enacted a law for a specific railroad company from Maryland. It didn't just make the railroad company consent to personal jurisdiction. It made the railroad company incorporate in Virginia. So talk about becoming subject to general jurisdiction under modern doctrine. It would be undisputed that the railroad would be fine there. Then you can look at Vermont in 1862. This is in the appendix at 246A. I cite this example because a lot of statutes had similar language. It said that you have to consent to be served with process as if the process had been served on the principal or the company subject to the laws of this state. There's lots of other illustrations of that prior to 1868 and then just after the 14th Amendment was ratified. I think I also heard my friend say that there's no question of coercion because this is akin to pointing a gun to the corporation's head and saying I'm going to blow your head off if you don't agree to this. I take a very different view as to what sort of choices big businesses like Norfolk Southern can make. I recognize they have shareholders. They want to make profit. Losing the Pennsylvania market wouldn't be great for them. But the idea that this is akin to pointing a gun to their head, let's tie this back to flesh and blood people. We make flesh and blood people honor their contracts to waive their rights to assert personal jurisdiction all the time with big companies like Norfolk Southern and Amazon and Apple. I'm not picking on them, but it's very difficult for consumers not to have access to an iPhone or to get the products and services that Norfolk Southern delivers or to get Amazon to provide them with things that they need every day. And that's not an anti-ex-post dichotomy where the consumer can say I get to make a choice individually in each lawsuit about whether I'm going to waive my right to personal jurisdiction. No, it's categorical. Now it's true that's between private parties and not the state, but the state ultimately has to ratify that contract because it's exercising adjudicatory authority. So it needs to say this contract is going to give me the power to issue a binding judgment in a case or controversy. So I think the analogy to real people is apt, and we should stop treating corporations as special. Let me talk about the F-squared versus the F-cubed situation. Respectfully, I do think you have to address that. You can't just toss it for another day for two reasons. One, this court doesn't find statutes unconstitutional facially as a general rule. So to the extent Pennsylvania law still has some as-applied validity, that needs to be addressed. Obviously, I want Mr. Mallory to win, and I think the statute is perfectly fine with an F-cubed situation, but I don't think you should dodge the F-squared situation, which has a lot of historical precedent and more case law, admittedly, applying those principles. And so the other practical point I would make, you're obviously aware of this, Cooper Tire, I think, is on hold pending this case. That's an F-squared situation with a resident from Georgia. So this issue is coming, and I don't think the court should punt on some sort of technicality. We should get into the history and traditions of the country and see what's valid. The final point I would make, Justice Kavanaugh, I completely agree a purpose of the union was to allow national markets. No one is disputing that Congress has power over commerce between the several states. My only point is they have to affirmatively exercise it. There's no dormant state of the Commerce Clause that then has preemptive effect under Article VI, Clause 2. And then back to Justice Jackson's point, the statute here talks about intrastate businesses that are doing business in Pennsylvania having to register. So that's already been accounted for. Thank you, counsel. The case is submitted.